In the Supreme Court of Georgia

Decided: May 9, 2016

S16A0498. JONES v. THE STATE.

MELTON, Justice.

Following a jury trial, Antonio Jones was found guilty of felony murder, aggravated assault, and possession of a firearm during the commission of a felony in connection with the shooting death of Akili Stewart.[1] On appeal Jones contends that the evidence presented at trial was insufficient to support his

---

[1] On March 31, 2014, Jones was indicted for malice murder, two counts of felony murder (predicated on armed robbery and aggravated assault), armed robbery, aggravated assault, and possession of a firearm during the commission of a felony. Following an April 1-7, 2014 jury trial, Jones was found guilty on one count of felony murder (predicated on aggravated assault), aggravated assault, and possession of a firearm during the commission of a felony. The jury acquitted Jones of malice murder. The armed robbery count and the felony murder count predicated on armed robbery were nolle prossed. On April 7, 2014, the trial court sentenced Jones to life imprisonment for felony murder and five consecutive years for possession of a firearm during the commission of a felony. The aggravated assault count was merged into the felony murder count for sentencing purposes. Jones filed a motion for new trial on April 8, 2014, which he amended on February 17, 2015. Following a February 26, 2015 hearing, the trial court denied the motion on March 9, 2015. Jones' timely appeal was docketed in this Court for the January 2016 Term and submitted for decision on the briefs.

convictions and that the trial court erred with respect to various evidentiary matters. We affirm.

1. Viewed in the light most favorable to the jury's verdict, the evidence reveals that, on March 28, 2012, Jones and Cory Thomas went to a home on Lee Street in DeKalb County, where Jones had been renting a room. When Jones and Thomas arrived at the home, Stewart and Terry Roach were already there. Jones and Thomas appeared to be high on some sort of drug when they arrived, and stated, while laughing, "We turning up," meaning that they were in a hyped up state. Jones sat down on the sofa, but eventually jumped up, pulled out a 9 millimeter handgun, and began laughing and pointing the gun at Stewart. Roach asked Jones what he was doing, and Jones put the gun back into his waistline. However, Jones soon pulled out the gun again and shot Stewart five times, killing him.

Roach ran out of the house just as another friend of his was arriving at the door. This friend saw Stewart's dead body on the floor of the house, and Roach said to the friend that Jones and Thomas had killed him. Roach's friend immediately left the scene, and Roach left the scene in his own car. Roach called 911 to report the murder as Jones and Thomas pursued him in another car. Jones

and Thomas called Roach several times after the shooting and told him to stay quiet about it, and they also enlisted Jones' cousin, an individual with nickname "Black," to call and threaten Roach in order to get him to stay quiet about the murder.

The night after the murder, Jones and Thomas attempted to dispose of Stewart's body by dumping it in a Walton County utility easement and lighting it on fire, but a witness saw the flames from the highway and called the police. While this witness was on the phone with 911, Jones and Thomas saw him, drove by him as they were leaving the scene in Jones' car, shot at him, and sped off.

This evidence was sufficient to enable a rational trier of fact to find Jones guilty of all of the crimes of which he was convicted beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. For the first time on appeal, Jones contends that the trial court erred in admitting into evidence the testimony of Francis Spiller, the State's expert witness on geo-cell phone analytics, because the State did not establish that the scientific techniques involved in geo-analytics were valid and capable of producing reliable results. See OCGA § 24-7-707 ("In criminal proceedings, the

opinions of experts on any question of science, skill, trade, or like questions shall always be admissible; and such opinions may be given on the facts as proved by other witnesses"); Harper v. State, 249 Ga. 519 (1) (292 SE2d 389) (1982) (in order for scientific principle or technique to be admissible, trial court must determine "whether the procedure or technique in question has reached a scientific stage of verifiable certainty").[2] Due to the fact that Jones did not object to Spiller's testimony at trial on the basis that he now asserts on appeal,[3] our analysis of this issue is limited to a review for "plain error[ ] affecting substantial rights." OCGA § 24-1-103 (d).

Specifically:

First, there must be an error or defect — some sort of "[d]eviation from a legal rule" — that has not been intentionally relinquished or

---

[2] We note that the requirements of Harper, supra, were applicable with respect to OCGA § 24-9-67 of Georgia's old Evidence Code. OCGA § 24-7-707 of the now applicable new Evidence Code is the nearly identical counterpart to former OCGA § 24-9-67 of the old Evidence Code. As we have stated previously, where "provisions of the new Evidence Code were carried over from our old Evidence Code, and when courts consider the meaning of those provisions, they may rely on Georgia decisions under the old Code." State v. Frost, 297 Ga. 296, 299 (773 SE2d 700) (2015).

[3] The record reveals that Jones objected to Spiller's qualifications as an expert, but never objected to her testimony based on any of the requirements of Harper, supra.

4

abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it "affected the outcome of the trial court proceedings." Fourth and finally, if the above three prongs are satisfied, the appellate court has the discretion to remedy the error — discretion which ought to be exercised only if the error "'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'"

(Punctuation and emphasis omitted.) State v. Kelly, 290 Ga. 29, 33 (2) (a) (718 SE2d 232) (2011), quoting Puckett v. United States, 556 U. S. 129, 135 (II) (129 SCt 1423, 173 LE2d 266) (2009). See also Gates v. State, 298 Ga. 324 (3) (781 SE2d 772) (2016). "[B]eyond showing a clear or obvious error, 'plain-error analysis … requires the appellant to make an affirmative showing that the error probably did affect the outcome below.'" (Citation and punctuation omitted.) Gates, supra, 298 Ga. at 327 (3).

Here, assuming without deciding that Jones could show any clear or obvious error in the trial court's admission of Spiller's testimony, he cannot "affirmative[ly] show[ ] that the [alleged] error probably did affect the outcome below." Shaw v. State, 292 Ga. 871, 873 (2) (742 SE2d 707) (2013). Spiller's testimony was used to indicate how the police were able to determine that, on

5

the day of the murder – but the day before the victim's body was disposed of by being burned– Jones' cell phone was located "about fourteen miles from [where] the [victim's] burned body [was found]." Setting aside the fact that Spiller's testimony did nothing to actually place Jones at the scene of the murder or the specific location where Stewart's body was burned, ample evidence actually placed Jones at the murder scene and the location where he and Thomas attempted to cover up the crime, and further identified Jones as the man who killed Stewart by shooting him five times. The evidence also revealed that Jones made further efforts to cover up the crime by threatening an eyewitness to the murder itself. In light of the overwhelming evidence of Jones' guilt, "it cannot be said that any error in the admission of [Spiller's testimony] likely affected the outcome below." Gates, supra, 298 Ga. at 328 (3).

3. In the absence of an objection at trial, Jones argues that the trial court committed plain error by allowing the State to elicit testimony from GBI Investigator Elizabeth Bigham, in which she stated that the information that she obtained from Roach during her investigation was more consistent with other evidence collected than the information that she obtained from Jones. Jones asserts that this testimony from Investigator Bigham constituted improper

6

bolstering of Roach's testimony. See OCGA §§ 24-6-608 and 24-6-611. We find no plain error.

In order to succeed on his claim of plain error, Jones must show, among other things, a legal error that is "clear or obvious, rather than subject to reasonable dispute." Kelly, supra, 290 Ga. at 33 (2) (a). Here, Jones cannot show such a clear and obvious error. More specifically, although

> it is improper to ask a testifying [witness] whether another witness is lying. . . . [the 11th Circuit has held that] it is often necessary . . . to focus a witness on the differences and similarities between his testimony and that of another witness. This is permissible provided he is not asked to testify as to the *veracity* of the other witness.

(Citation and punctuation omitted; emphasis supplied.) United States v. Schmitz, 634 F3d. 1247, 1268-1269 (IV) (D) (11th Cir. 2011). See also United States v. McGill, – F3d. – (D.C. Cir. 2016) (questioning " designed to compare the defendant's factual account with other witnesses' and allow jurors to draw their own conclusions" is "unobjectionable") (citation omitted).[4]

---

[4] See Parker v. State, 296 Ga. 586, 591 (3) (a) (769 SE2d 329) (2015) ("Our new Evidence Code was based in large part on the Federal Rules of Evidence. . . . And where the new Georgia rules mirror their federal counterparts, it is clear that the General Assembly intended for Georgia courts to look to the federal rules and how federal appellate courts have interpreted those rules for guidance") (citation omitted).

In the instant case, it is not clear that the testimony in question speaks directly to whether Roach was actually telling the truth. The record reveals that, during his cross-examination of Investigator Bigham, Jones raised the idea that Bigham's investigation may have been insufficient, because she was never able to find and interview an individual named "Black" in order to verify Roach's story that Black had threatened him after Stewart's murder. During the State's redirect, the State asked Investigator Bigham whether she was able to corroborate much of the information that Roach provided to her, and whether the information that Roach provided to her turned out to be more consistent with other evidence she had obtained than the information that Jones had provided to her. Investigator Bigham responded affirmatively.

Jones' assertions to the contrary notwithstanding, this testimony did not speak directly to Roach's truthfulness. Rather, the testimony was elicited in direct response to questions raised about the manner in which Investigator Bigham conducted her investigation, and involved whether aspects of that investigation lined up with information provided by Roach. We find no "clear and obvious" error from the admission of this testimony that would satisfy the rigorous requirements of establishing plain error. See Kelly, supra.

4. Citing Davis v. State, 279 Ga. 786, 788 (5) (621 SE2d 446) (2005), Jones asserts that the trial court erred by admitting into evidence a recording of a July 11, 2012 phone call made from the DeKalb County jail in which Jones admitted that he was at the house where Stewart was shot at the time of the murder. In Davis, we held that the State laid a proper foundation for the admission into evidence of a recorded phone call from a jailed inmate where it established

> that the jail recording system accurately records the phone calls; that the calls are stored in a computer databank; that the recorder was working properly; that inmates are aware that their telephone conversations are subject to being recorded; that the recording had not been altered; and that the investigating detective recognized the voices on the recording as belonging to appellant [and others].

Id. However, due to the passage of Georgia's new Evidence Code, the foundational factors from Davis regarding the admission into evidence of an automated recording such as the one at issue in this case are no longer applicable. Instead, OCGA § 24-9-923 (c) provides for the admission of this evidence. See Green Ga. Law of Evidence § 9:24 ("OCGA § 24-9-923 has overridden [the foundational requirements for admitting evidence of voice recordings] for audio recordings created when recording equipment was not

9

being operated by an individual"). See also OCGA § 24-9-901 (a). In this regard, OCGA § 24-9-923 (c) states in relevant part:

> Subject to any other valid objection . . . audio recordings produced at a time when the device producing the items was not being operated by an individual person or was not under the personal control or in the presence of an individual operator shall be admissible in evidence when the court determines, based on competent evidence presented to the court, that such items tend to show reliably the fact or facts for which the items are offered. . . .

Here, the State showed, through the testimony of Lieutenant C. Patterson that the jail recording system accurately records phone calls and that the system recorded Jones' phone call at the time that he made it. Following Lieutenant Patterson's testimony, the State called Investigator Bigham to the stand, who knew Jones' voice and who established that the man in the recording who made the phone call sounded like Jones. Because this competent evidence would tend to show reliably that the automated recording was in fact a recording of the phone call that Jones made from jail, we find no error in the trial court's determination that this evidence was admissible. See, e.g., United States v. Spence, 566 Fed. Appx. 240, 243 (2) (4th Cir. 2014) ("The proponent of an audio recording carries the burden of demonstrating that the recording was sufficiently authentic to be admitted into evidence. . . .Under Federal Rule of

Evidence 901(a), the requirement for authentication is satisfied when there is evidence sufficient to support a finding that the item is what the proponent claims it is") (citation and punctuation omitted).

Judgment affirmed. All the Justices concur.