305 Ga. 226
FINAL COPY

S18A1234. WINTERS v. THE STATE.

PETERSON, Justice.

Willie Winters III appeals his conviction for felony murder in connection with the January 10, 1987 shooting death of Stephen Gary Jones.[1] Winters argues that (1) the evidence was insufficient to convict him of felony murder and the trial court erred by (2) admitting a witness's post-hypnotic statement and (3) failing to admit a section of a GBI report as a public record under OCGA § 24-8-803 (8) (C). Winters also argues that his counsel rendered constitutionally ineffective assistance by (4) relying on an alleged unwritten

---

[1] The crimes occurred during the early morning hours of January 10, 1987. On June 3, 2014, a Houston County grand jury indicted Winters for malice murder and felony murder based on the underlying felony of aggravated assault with a deadly weapon. The record does not explain the delay between the commission of the crimes and the date of the indictment, but it does indicate that Winters was incarcerated on several unrelated charges for violent crimes at the time of the indictment. At trial in July 2016, the jury convicted Winters of felony murder but was unable to reach a verdict on the malice murder count. The trial court declared a mistrial as to malice murder and entered a judgment of nolle prosequi on it. Winters was sentenced to life with the possibility of parole. Winters timely filed a motion for new trial on July 18, 2016, which was amended on March 27, 2017 and again on November 22, 2017. On March 16, 2018, the trial court denied the amended motion for new trial. Winters timely filed a notice of appeal. His appeal was docketed in this Court for the August 2018 term and submitted for decision on the briefs.

stipulation to admit a section of the GBI report and (5) failing to move for either a mistrial or a continuance when it became clear the report would not be admitted. We affirm.

The trial evidence viewed in the light most favorable to the verdict showed that at about 1:00 a.m. on January 10, 1987, Lori Leary and Stephen Gary Jones left a bar together and got into Jones's Camaro. Jones sat in the driver's seat, and Leary sat in the passenger's seat. They talked in the parking lot while Leary rolled down the window to smoke a cigarette. Leary did not see Jones with a gun. Winters approached the car, reached into the car across Leary, said "you owe me," and fired two shots at Jones. Leary forced her way out of the car, pushing the door into Winters, and ran back to the bar for help.

Jones and Winters then began to exchange gunfire. Winters used a .22-caliber handgun while Jones used a .45-caliber weapon. The exchange left Jones mortally wounded and Winters critically injured. After the gunfight, Winters took off in Jones's Camaro.

The police found the Camaro crashed in a ditch nearby; Winters was inside the car. There was a bullet hole in the driver's side mirror. The police found a .22-caliber gun in the car and a .45-caliber handgun next to Jones's

body in the parking lot. Jones's fatal wounds were caused by the .22-caliber handgun found in the car.

1. Winters challenges the sufficiency of the evidence to convict him of felony murder. He has continually claimed that he acted in self-defense and claims that it is impossible to determine who shot first and that Leary, the only eyewitness, gave contradictory versions of the events at trial. But it is for the jury — not this Court — to resolve conflicts in evidence, determine the credibility of witnesses, and assess questions of justification, including self-defense. OCGA § 24-6-620; Jackson v. State, 279 Ga. 721, 721 (620 SE2d 828) (2005); Harris v. State, 279 Ga. 304, 306 (2) (612 SE2d 789) (2005); Harden v. State, 278 Ga. 40, 41 (1) (597 SE2d 380) (2004). We must view the facts in the light most favorable to the verdict. Jackson v. Virginia, 443 U. S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979). So viewed, the evidence shows that Winters walked up to Jones, pulled a gun on him, shot him multiple times, then fled the scene. On those facts, a rational trier of fact could have found Winters guilty beyond a reasonable doubt of the crime for which he was convicted.

2. During the initial investigation, Leary told law enforcement that Winters "reached across the seat" before shooting Jones. After making that

3

statement, but before trial, Leary underwent hypnosis. Later on at trial, Leary testified regarding the same moment: "There was a hand across my face." The trial court admitted the statement over Winters's objection, explaining that it is merely a "different description of the same fact," and that the law does not require the witness to use the "exact same words" as before. Winters argues that the trial court erred when it overruled his objection to this testimony because it was not identical to Leary's pre-hypnotic statement. We disagree.

The rule regarding the admissibility of statements by a witness who has undergone hypnosis is clear: the witness's post-hypnotic testimony cannot differ from her pre-hypnotic statements. Walraven v. State, 255 Ga. 276, 282 (5) (336 SE2d 798) (1985) (The witness "may only testify, for the party subjecting the witness to hypnosis, as to the specific content of recorded statements that [she] has made prior to hypnosis, or as to events occurring after the hypnosis session." (footnote omitted)).[2] In short, the "testimony will simply be considered frozen

_____

[2] Walraven, of course, was decided under the old Evidence Code, and Winters was tried under the new Evidence Code. The parties unhelpfully failed to brief whether Walraven remains good law under the new Evidence Code. But we conclude that it does. Walraven was an application of the standard we outlined in Harper v. State, 249 Ga. 519, 525 (1) (292 SE2d 389) (1982). We have already explained that the Harper standard still applies under the new Code because the statute it was decided under, the old OCGA § 24-9-67, was carried forward as the new OCGA § 24-7-707. See Jones v. State, 299 Ga. 40, 42 n.2 (785 SE2d 886) (2016).

4

. . . as of the date of the hypnosis." Id. This rule, however, is not about semantics but substance; it does not compel the witness to parrot her previous statements as if reading from a script. This standard instead limits the witness's testimony to the "substance" of her pre-hypnotic statements. Id. A trial court's determination regarding the admissibility of evidence is reviewed for an abuse of discretion. See Ramirez v. State, 303 Ga. 232, 235 (II) (811 SE2d 416) (2018).

Here, the substance of Leary's pre-hypnotic statement and her post-hypnotic statement was essentially the same and contains the same principal facts and details. In her pre-hypnotic statement, she said that a man reached across the passenger seat. In her post-hypnotic statement, Leary said that, when she was in the passenger seat, a man put his hand across her face. Under these circumstances, the trial court did not abuse its discretion in admitting Leary's testimony.

3. Winters argues that the trial court erred by failing to admit a portion of

We also note that OCGA § 24-7-707 has no equivalent federal rule, and thus our old case law applying that statute's predecessor remains applicable. See State v. Almanza, 304 Ga. 553, 557 (820 SE2d 1) (2018) ("If there is no materially identical Federal Rule of Evidence and a provision of the old Evidence Code was retained in the new Code, our case law interpreting that former provision applies.").

a GBI report relating to bite marks on Leary's arm. We conclude that any error was harmless.

At trial, Leary was asked during cross-examination about bite marks on her arm. She testified that she told police that Winters had bitten her. Winters introduced two exhibits depicting the bite marks. Later, during the direct examination of Officer Gaylen Knowl, the State introduced a picture of Winters's teeth. On cross-examination, Winters introduced photographs of dental impressions of, among others, Leary and himself. Winters then sought to admit a section of a GBI report evaluating the bite mark and dental impressions. Winters claimed that the State had agreed that the dental impression evidence could be admitted because the State's ballistic expert, one of several involved in the investigation, signed the report as a whole. The State objected to the ballistics expert testifying regarding that section of the report because he was not involved in that portion of the investigation. The State also said it had no intention of arguing that Winters bit Leary and that it introduced the picture of Winters's teeth only because it was the best picture of his face and beard. The trial court found that the parties had a misunderstanding about the admission of the report.

Winters then moved to admit the report as a public record under OCGA § 24-8-803 (8) (c). The trial court denied Winters's motion to admit the report, concluding that the public record exception did not apply to investigative conclusions, the report was not a public record, and that it would not allow in an expert opinion without an expert witness to attest to its veracity. Winters now argues the evidence should have been admitted to impeach Leary.

Even if the decision of the trial court to not admit the section of the GBI report at issue into evidence was error — a question that we do not resolve — it was harmless. "The test for determining nonconstitutional harmless error is whether it is highly probable that the error did not contribute to the verdict." Smith v. State, 299 Ga. 424, 432 (2) (d) (788 SE2d 433) (2016) (citation and punctuation omitted); see also OCGA § 24-1-103 (a). In assessing harmfulness, we review the record "de novo and weigh the evidence as we would expect reasonable jurors to have done . . . ." Smith, 299 Ga. at 432 (2) (d) (citation and punctuation omitted).

Winters argues that the GBI report was essential to impeach Leary's credibility, but her credibility already had been challenged repeatedly by other evidence. On cross-examination, trial counsel elicited from Leary that she did

not remember but also did not deny having given a false name to the police or falsely claiming someone had followed her to her car before the shooting, had a drinking problem, had been drinking excessively on the night of the shooting, was unsteady on her feet, and lied about her certainty as to what the shooter said. She even testified that she did not initially know who had bitten her. Moreover, the State never argued to the jury that Winters bit Leary; trial counsel admitted that he was the one who raised the issue.

Leary's own admissions placed the question of her credibility, including as it relates to who bit her, squarely before the jury without the need for a GBI report. See Boothe v. State, 293 Ga. 285, 294 (3) (745 SE2d 594) (2013) (finding any error regarding the admission of additional impeachment evidence harmless when the witness had already been heavily impeached). Considering the trial record as a whole, it is highly probable that the outcome of the trial would not have been different had the portion of the GBI report regarding the bite mark on Leary's arm been admitted into evidence, and any error by the trial court in excluding that section of the GBI report was harmless.

4. Finally, Winters argues that his trial counsel was ineffective for relying on an unwritten stipulation to Winters's detriment and failing to move for a

mistrial or a continuance when it became apparent that the section of the GBI report mentioned above would not be admitted into evidence. We disagree.

To prevail on a claim of ineffective assistance of counsel, Winters must show both that his trial counsel's performance was deficient and that this deficiency prejudiced his defense. Strickland v. Washington, 466 U. S. 668, 687 (104 SCt 2052, 80 LE2d 674) (1984). To establish deficient performance, an appellant "must overcome the strong presumption that his . . . counsel's conduct falls within the broad range of reasonable professional conduct and show that his counsel performed in an objectively unreasonable" way in the light of all of the circumstances. Smith v. State, 296 Ga. 731, 733 (2) (770 SE2d 610) (2015) (citation and punctuation omitted). To establish prejudice, an appellant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U. S. at 694. An appellant must prove both prongs of the Strickland test, and if he fails to prove one prong, "it is not incumbent upon this Court to examine the other prong." Smith, 296 Ga. at 733 (2) (citation and punctuation omitted). In reviewing either component of the inquiry, all factual findings by the trial court will be affirmed unless clearly erroneous. Id.

9

Even if trial counsel was deficient for relying on what he wrongly believed was an unwritten stipulation for the admissibility of the report and for then failing to move for a mistrial or a continuance when the report was excluded, Winters is unable to show he was prejudiced. As explained in Division 3 above, the report was just one of many pieces of evidence impugning Leary's credibility, and the issue of who bit Leary was not even part of the State's case.[3] As such, it is not reasonably probable that the outcome of the case would have been different but for trial counsel's conduct.

Judgment affirmed. All the Justices concur.

---

[3] Trial counsel explained that there was no way that he could determine the identity of the person who completed the dental comparison, making a continuance unnecessary.

10

Decided February 18, 2019.

Murder. Houston Superior Court. Before Judge Lumsden.

David G. Daniell, for appellant.

George H. Hartwig III, District Attorney, Daniel P. Bibler, Marie R. Banks, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Matthew M. Youn, Assistant Attorney General, for appellee.