S12A1036. DOYLE v. THE STATE.
(733 SE2d 290)

THOMPSON, Presiding Justice.

Appellant Devon Sharif Doyle was convicted and sentenced for malice murder, several counts of aggravated assault, and possession of a firearm during the commission of a crime.[1] He appeals, asserting, inter alia, trial counsel was ineffective in failing to object to prosecutorial misconduct. Finding no error, we affirm.

1. Viewing the evidence in the light most favorable to the verdict, we find the following: The victims, who were college students, were attending a return-to-college party at a house in Savannah when a small group of individuals, including appellant's 14-year-old brother,

---

[1] The crimes occurred on August 17, 2008. The indictment charged appellant with malice murder, felony murder, four counts of aggravated assault, and four counts of possession of a firearm during the commission of a felony. Trial commenced on February 9, 2010, and the jury returned its verdict on February 11, finding appellant guilty on all counts. The trial court sentenced appellant to life in prison for malice murder, one consecutive 20-year term for one of the aggravated assault counts, two concurrent 20-year terms for each of two aggravated assault counts, and a five-year consecutive term for one of the possession counts. The remaining counts were merged or vacated under *Malcolm v. State*, 263 Ga. 369 (434 SE2d 479) (1993). Appellant filed a motion for new trial on February 26, 2010. The motion was amended on February 28, 2011, and denied on July 6, 2011. Appellant filed a notice of appeal on July 19, 2011. The case was docketed in this Court for the April 2012 term and submitted for decision on the briefs.

Tavarus, crashed the party. Tensions rose between the college students and the intruders. The students asked the intruders to leave, and they did so, only to return a short time later. An altercation ensued, and the students forced the intruders outside. At that point, appellant's ex-girlfriend telephoned appellant and told him that his brother had been in a fight at the house. Appellant drove to the party and approached the students outside of the house while carrying a revolver. As the students retreated into the house, appellant, Tavarus, and the other intruders followed them, and Tavarus threw a chair at one of the partygoers. The students tried to shut the front door, but the intruders kept pushing and kicking against it. Then appellant fired his revolver at and through the door four times. Three of the students were wounded, one of them fatally. Tavarus identified his brother as the shooter; so did his ex-girlfriend.[2] Other witnesses informed police that the shooter was wearing a red shirt and plaid pants. Police seized a red shirt, plaid pants, and a holster (which had been used to carry a revolver) from appellant's room.

The evidence was sufficient to enable any rational trier of fact to find appellant guilty beyond a reasonable doubt of the crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Appellant testified on direct examination as follows:

A. When I got out of the car, me and Tavarus's friends was going up to the door. Tavarus went back in the car and grabbed the gun and followed us up to the door. . . . Not too long after that Tavarus hit somebody with a chair. After that they ran in the house and closed the door. Tavarus kicked the door. I pushed the door. Neither time did the door open. . . . That's when Tavarus told me Devon, get out of the way. . . . In other words, he was saying he's about to shoot. So when I backed up from the porch, I seen Tavarus put four shots in the front door.

. . .

Q. Is this the first time you've talked about this?
A. Yes, it is.
Q. Why didn't you say anything before?

---

[2] Appellant's ex-girlfriend testified at trial that she did not see who fired appellant's pistol. However, she gave a statement to police shortly after the crimes naming appellant as the assailant.

A. For my brother's safety. Going to school, he was doing a lot. I really ain't want to go around there and tell on him because he can't stand. I wouldn't put that much pressure on him. He couldn't stand it emotionally. He couldn't stand it physically. He can't stand it at all. So I just kept my mouth closed about the whole thing.

On cross-examination, the prosecutor questioned appellant about his failure to previously provide his version of events:

Q. And you've never told anybody this before.
A. Never told.
Q. Not a soul.
A. Never told.
Q. Not a soul. I'm asking you that.
A. Nobody.
Q. Not your mama.
A. Nobody.
Q. Not your brothers.
A. Nobody.
Q. Not Tavarus.
A. Nobody.
Q. Not your girlfriend.
A. Nobody.
Q. And we're the first to hear this after you've heard all the evidence. This is your story.
A. Yeah.

Based on this colloquy, the prosecutor argued in closing:

He said I told no one. Don't you think for a year and a half he would have told the one person that he didn't do this would have been his attorney? Don't you think his attorney would have built a case around going after Tavarus? That's common sense. But not even him. [Defense counsel] built his case thinking there's a weakness in the forensic. But we had a response for that. And all of a sudden his client takes that stand and says oh, I was there. The whole thing was that his client wasn't there from the questioning of the State's witnesses. And then it changes. What we call a "Hail Mary" pass. It's call[ed] desperation. . . . And you think it's going to take that man right there a year and a half not to tell somebody, his family members, that I didn't do it. I told nobody. All of a sudden at the end of the trial I'm doing an

about-face. I really didn't — I was there. I really didn't do it. . . . This man has — he's hoping that none of you have common sense and don't see he's lying. And to lose a case on a lie would be tragic. Because that's what he's done before you today is lie. . . . And, you know, what got me on the second statement when [appellant's ex-girlfriend] said I'm not changing my story. And she kept saying repeatedly I feel better now, I feel better now, I can sleep at night. That's sincerity. That's the truth. . . . And he did a "Hail Mary" pass by testifying. Desperation defense. Because if his attorney, as I told you, knew about it, he would have prepared for it. But he didn't. Most of the closing [argument] he did was about the forensic again.

Appellant asserts the prosecution committed prosecutorial misconduct by questioning him about his post-arrest silence, commenting upon his post-arrest silence in closing argument, and expressing his personal opinion as to the mendacity of appellant and the veracity of his ex-girlfriend when she made the statement to police identifying appellant as the shooter. However, appellant's trial counsel did not lodge an objection to the prosecutor's questions or comments. Trial counsel's failure to do so precludes our consideration of appellant's assertions. *Allen v. State*, 272 Ga. 513, 515 (3) (530 SE2d 186) (2000). See also *Gates v. State*, 252 Ga. App. 20, 22 (555 SE2d 494) (2001) (contemporaneous objection rule cannot be skirted by calling alleged errors prosecutorial misconduct).

3. Next, appellant posits that trial counsel rendered ineffective assistance by failing to object to the prosecutorial misconduct alleged in Division 2. For appellant to succeed on this claim, he "must show that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U. S. 668, 687 (104 SC 2052, 80 LE2d 674) (1984).

At the hearing on appellant's motion for new trial, appellant's trial counsel was not asked about his failure to object to each and every instance of alleged prosecutorial misconduct. Instead, he was only asked whether he had a reason why he did not object during closing argument when the prosecutor said appellant never told anyone, not even his attorney, that Tavarus was the shooter.[3] Accordingly, we will confine our review of appellant's claim of ineffectiveness of counsel to that one issue. See *Jackson v. State*, 288 Ga. App. 432, 434 (654 SE2d 232) (2007) (in absence of trial counsel's testimony we

---

[3] Appellant's trial counsel responded: "None that as I sit here now I can think of."

cannot assume counsel's actions fell outside the " 'wide range of reasonable professional assistance' that is presumed by *Strickland*").

Ordinarily, it would be improper for the prosecution to comment upon a criminal defendant's silence or failure to come forward even when he takes the witness stand. *Fullwood v. State*, 304 Ga. App. 341, 343 (696 SE2d 367) (2010). However, where, as here, a defendant opens the door to this line of questioning during direct examination, the prosecution has every right to pursue a thorough and sifting examination and to comment upon it during closing argument. Id. Thus, any objection to the prosecution's comment upon appellant's silence would have been overruled. Because the failure to make a meritless objection cannot constitute ineffective assistance, we conclude that trial counsel was not ineffective for failing to object to the comment upon appellant's silence. *Fults v. State*, 274 Ga. 82, 87 (7) (548 SE2d 315) (2001).

4. A charge of self-defense was not warranted under the facts of this case. There was no evidence that appellant fired his pistol in an attempt to protect himself or third persons against the imminent use of unlawful force by others. OCGA § 16-3-21.

5. In response to a jury request to elaborate on the definition of malice murder, the trial court recharged as follows:

> [T]he definition of malice murder that I gave you orally and that you have contained in the written charge is Georgia's law definition of malice murder. It is what the law provides are the elements of malice murder. I obviously don't know where the confusion lies exactly. And I don't think it would be appropriate . . . for you to really tell me at this point where that confusion lies. If you haven't resorted to having one of the members of the jury read the entire definition of malice murder again, then that may be one thing you may want to do. I think sometimes I try very hard to explain that the State can charge murder in two different ways. And I think that should be clear. Felony murder does not require malice. In order to convict a person of felony murder, you would have to find that the State has proven beyond a reasonable doubt all the elements of aggravated assault as a result of which there is a death. There is a homicide. And all of that is set forth straightforwardly in the charge.

Appellant contends the recharge was erroneous because the use of the word "homicide" was highly prejudicial. We disagree. Whether the victim died as a result of a homicide was not the ultimate issue for the jury to decide in this case. The ultimate issue was the identity of

the assailant. Thus, the use of the word homicide could not have prejudiced appellant. See generally *Mangrum v. State*, 285 Ga. 676, 679 (4) (681 SE2d 130) (2009) (expert's use of word "homicide" did not invade province of jury when ultimate issue was identity of killer).

Appellant also asserts the recharge was erroneous because the proximate cause element of felony murder was omitted. We find no error in this regard.

> [O]ur case law contains no general mandate requiring the trial courts, when responding to a jury's request for a recharge on a particular issue, to also recharge on all principles asserted in connection with that issue. Moreover, where the jury requests further instructions upon a particular phase of the case, the court in its discretion may recharge them in full, or only upon the point or points requested.

(Punctuation and emphasis omitted.) *Salahuddin v. State*, 277 Ga. 561, 564-565 (4) (592 SE2d 410) (2004). As for the recharge on felony murder, we look to the charge as a whole, including the detailed and correct instructions in the original charge, and deem it highly unlikely that the jury would have been confused by the recharge. *Dukes v. State*, 290 Ga. 486, 487 (2) (722 SE2d 701) (2012). This is especially so since the jury possessed a copy of the written instructions during deliberations. Moreover, in view of the fact that appellant was convicted and sentenced for malice murder and the felony murder conviction was vacated, see *Malcolm v. State*, supra, 263 Ga. 369, any error in recharging the jury on felony murder was harmless.

*Judgment affirmed. All the Justices concur.*

DECIDED OCTOBER 15, 2012.

*Richard M. Darden*, for appellant.
*Larry Chisolm, District Attorney, Thomas M. Cerbone, Assistant District Attorney, Samuel S. Olens, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Dana E. Weinberger, Assistant Attorney General*, for appellee.