305 Ga. 792
FINAL COPY

S19A0374.  THE STATE v. NEWMAN.

MELTON, Chief Justice.

Following a jury trial, David Miller Newman, a previously convicted felon, was found guilty of two counts of felony murder and aggravated assault, three counts of possession of a firearm during the commission of a felony, and possession of a firearm by a convicted felon in connection with the shooting death of Jason Wood and for shooting at Candace Shadowens. Newman filed a timely motion for new trial, and the trial court granted the motion on the grounds that (1) the trial court erred in failing to charge the jury, sua sponte, on the use of force in defense of habitation (see OCGA § 16-3-23), and (2) trial counsel was ineffective for failing to request a charge on that defense. The State appeals from this ruling (see OCGA § 5-7-1 (a) (8)), and, for the reasons that follow, we reverse the trial court's decision and remand this case for further proceedings to address any remaining claims that were not

addressed in the trial court's original order on Newman's motion for new trial.

1. The evidence presented at trial reveals that, in June 2016, Newman worked as a supervisor at a company called Salt Creek Couriers ("Salt Creek"). On the morning of June 16, 2016, Wood, one of the employees of Salt Creek, failed to report for work, and Newman went to Wood's home and fired Wood from Salt Creek. Newman took the keys to a company van from Wood and planned to return later to retrieve the van from Wood's home. Although Newman did not have any violent confrontation with Wood at that time, he nevertheless decided to retrieve a handgun before returning to Wood's house based on "a gut instinct." Newman returned to Wood's home around 6:30 p.m. that night in a black van with his friend, Carolee Pritchard, one of the owners of Salt Creek, to retrieve the white company van.

Wood's girlfriend, Shadowens, was at home with Wood when Newman and Pritchard arrived. Newman spoke with Wood outside the house, and, at some point, Newman pulled out his gun. When

Shadowens came outside, Wood told her to call 911 because Newman had pulled a gun on him. As Shadowens started to dial 911, Newman said, referring to Shadowens, "I'll kill that b**ch." Shadowens replied, "If you're going to shoot somebody, just shoot somebody, you fat b**ch." Newman then shot Wood in the chest as Wood attempted to push Shadowens out of the way. The shell casing from the gunshot was later found in some grass that was, according to the crime scene investigator, "pretty far from where the van would [have been]," which was consistent with the gun being fired outside of the van. Further, almost all of Wood's blood was located on the outside of the van, which indicated, according to the State's forensic pathologist, that Wood was not inside the van, but outside of it, when he was shot. A neighbor of Wood's, Jeremy Zottola, had a surveillance system that captured audio of the gunshot, and that captured audio of Shadowens shouting "If you're going to shoot somebody, just shoot somebody, you fat b**ch," just before the gunshot. The video from the surveillance system only showed Newman and Pritchard driving away from the scene in the black van and the white company van.

Another neighbor of Wood who was a registered nurse heard the gunshot and attempted to render aid to Wood at the scene, but Wood died from his gunshot wound. When officers arrived, Shadowens told them that Newman had shot Wood.

While fleeing the scene in the company van, Newman threw his handgun out the window and called 911. The gun was later recovered by police. During the 911 call, Newman claimed that Wood had a gun and shot at him. The police pulled Newman over while he was still on the phone with 911, and he then informed police that he did not know what happened and that he just heard a gunshot and drove off. When Newman was later interviewed by police, he changed his story again, this time claiming that neither he nor Wood had a gun, and that when he heard a loud boom he left the scene. Newman was then arrested, and, when he was interviewed for a second time by police, he changed his story again, now admitting that he had a gun, but claiming that the gun accidentally went off when Wood hit the van door, which jarred the gun.

On September 14, 2016, Newman was charged with malice

murder; two counts of felony murder (predicated on aggravated assault and possession of a firearm by a convicted felon); two counts of aggravated assault; attempted murder of Shadowens; four counts of possession of a firearm during the commission of a felony; and possession of a firearm by a convicted felon.

After being indicted, Newman changed his story once more, saying in an interview with the prosecuting attorney that, after he arrived at Wood's house with a gun, Wood got on his phone, saying that he was dialing 911, and also saying to Newman that he was going to "get [his] money" from Newman. Newman said to Wood, while holding the gun, "Don't make me shoot you. Go inside." Wood then entered the house and re-emerged with Shadowens behind him, and Shadowens was carrying a baseball bat. Newman claimed that he got into the company van and put the gun on his lap. Then Shadowens opened the door to the van, which allowed Wood to jump into the van, and, as the gun started to fall from Newman's lap, Newman grabbed it and it accidentally went off. Pritchard asked Newman if he had shot Wood, and Newman said, "No, the gun just

went off."

At trial, Pritchard testified that, after Newman got into the company van, Shadowens opened the door to the van and Wood was inside the van when the gunshot went off. Then Pritchard saw Wood run back toward the front of his house. Newman testified in his own defense and changed his story yet again. This time he claimed that, when he arrived at Wood's home, he placed $100 in an envelope and put that envelope inside the cup holder of the company van. Newman alleged that Wood threatened to rob him and that Newman pulled out his gun, cocked it, and said, "No, you ain't." Wood then stopped coming at Newman and got on his phone to call 911. Newman then got into the company van, put the gun on his lap, and tried to lock the van door, but the door did not lock. Then Wood and Shadowens ran to the van and Shadowens opened the door to the van while Wood started to get into the van. The gun then slipped from Newman's lap after Wood hit him and it fired when Newman reached to grab it. Newman believed that the safety was still on and that the gun "just went off" without him trying to shoot it.

The trial court charged the jury on the defenses of self-defense and accident, but did not charge the jury on the use of force in defense of habitation, and no such charge was requested at trial.[1]

When viewed in the light most favorable to the jury's verdict, the evidence presented at trial was sufficient to authorize a rational jury to reject Newman's claims of accident and self-defense and to find him guilty beyond a reasonable doubt of the crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979). See also *Revere v. State*, 302 Ga. 44 (1) (805 SE2d 69) (2017).

2. The State contends that the trial court erred in granting Newman's motion for new trial on the bases that (a) a jury charge

---

[1] Newman was found guilty of both counts of felony murder and aggravated assault, three of four counts of possession of a firearm during the commission of a felony, and possession of a firearm by a convicted felon. The jury could not reach a verdict on malice murder (and the State then entered an order of nolle prosequi on that count), and acquitted Newman of attempted murder and one count of possession of a firearm during the commission of a felony. Newman was sentenced to serve life in prison for one of the felony murder counts, twenty concurrent years for the aggravated assault upon Shadowens, five consecutive years for the felon-in-possession-of-a-firearm count, and five years each for two of the three possession-of-a-firearm-during-the-commission-of-a-felony counts. The remaining counts were merged or vacated for sentencing purposes.

on the use of force in defense of habitation should have been given at Newman's trial, and (b) trial counsel was ineffective for having failed to request such a charge. As explained more fully below, because the record reveals that the failure to give a charge on the use of force in defense of habitation resulted in no harm to Newman, we agree with the State that the trial court erred in concluding that the failure to give such a charge warranted the grant of a new trial and in concluding that trial counsel was ineffective for having failed to request one.

(a) Because Newman failed to object to the trial court's failure to charge on defense of habitation, we must determine whether the trial court correctly concluded that the failure to give a charge on defense of habitation constituted plain error such that Newman was entitled to a new trial. See *State v. Johnson*, 305 Ga. 237, 239 (824 SE2d 317) (2019). See also OCGA § 17-8-58 (a) and (b). In order to show plain error:

> First, there must be an error or defect — some sort of "[d]eviation from a legal rule" — that has not been intentionally relinquished or abandoned, i.e.,

affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it "affected the outcome of the trial court proceedings." Fourth and finally, if the above three prongs are satisfied, the appellate court has the discretion to remedy the error — discretion which ought to be exercised only if the error "'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'"

(Citation, punctuation and emphasis omitted.) *State v. Kelly*, 290 Ga. 29, 33 (2) (a) (718 SE2d 232) (2011).

OCGA § 16-3-23 sets forth the legal parameters for the use of force in defense of habitation, and the statute provides:

> A person is justified in threatening or using force against another when and to the extent that he or she reasonably believes that such threat or force is necessary to prevent or terminate such other's unlawful entry into or attack upon a habitation; however, such person is justified in the use of force which is intended or likely to cause death or great bodily harm only if:
>
> (1) The entry is made or attempted in a violent and tumultuous manner and he or she reasonably believes that the entry is attempted or made for the purpose of assaulting or offering personal violence to any person dwelling or being therein and that such force is necessary to prevent the assault or offer of personal violence;
>
> (2) That force is used against another person

who is not a member of the family or household and who unlawfully and forcibly enters or has unlawfully and forcibly entered the residence and the person using such force knew or had reason to believe that an unlawful and forcible entry occurred; or

(3) The person using such force reasonably believes that the entry is made or attempted for the purpose of committing a felony therein and that such force is necessary to prevent the commission of the felony.

Further, "[a]s used in [OCGA §] 16-3-23 . . . the term 'habitation' [includes] any . . . motor vehicle." OCGA § 16-3-24.1. Moreover, "[t]o authorize a jury instruction . . . there need only be produced at trial slight evidence supporting the theory of the charge." *Davis v. State*, 269 Ga. 276, 279 (3) (496 SE2d 699) (1998).

As indicated by the plain language of OCGA § 16-3-23, when a person reasonably believes that the use of force is necessary to prevent or stop another from unlawfully entering or attacking a habitation — specifically when that other person is tumultuously entering the habitation for the purpose of committing violence to someone inside or for the purpose of committing a felony — the person defending the habitation may use force that is "intended or

likely to cause death or great bodily harm." Id. The use of force in defense of habitation is authorized only if the specific requirements of OCGA § 16-3-23 are satisfied.

Here, Newman contends that, despite his insistence that he only shot Wood by accident, he was entitled to a charge on defense of habitation based on the evidence presented at trial indicating that Wood was violently entering the company van and possibly attempting to steal money from inside the van at the time that Wood was shot.

Even assuming (without deciding) that Newman presented the "slight evidence" necessary to support the giving of a charge on defense of habitation, and that the failure to give such a charge constituted a clear or obvious error, this still would not automatically show that the failure to give the charge "affected the outcome of the trial court proceedings" for purposes of showing plain error. (Citation and punctuation omitted.) *Kelly*, supra, 290 Ga. at 33 (2) (a).

The record does not support a finding of harm to Newman that

would have warranted the granting of a new trial. *Kelly*, supra, 290 Ga. at 33 (2) (a). Specifically, the record shows that Newman deliberately brought a gun with him to Wood's house to retrieve the company van; that Shadowens can be heard in a surveillance video confronting Newman about his apparent desire to shoot someone by telling him that "[i]f [he was] going to shoot somebody, just shoot somebody"; that a gunshot can be heard on the surveillance video just after Shadowens's statement to Newman; that all of the forensic evidence presented at trial ran contrary to Newman's claim that the shooting took place inside the van; and, most importantly, that Newman gave several shifting and inconsistent stories about how the shooting took place — none of which suggested that he intentionally shot Wood, including his trial testimony in which he told the jury that the shooting was accidental. Although the jury was not specifically instructed on defense of habitation, the jury was, in fact, instructed on self-defense as well as accident, and the jury rejected all of Newman's conflicting stories and those defenses. In light of the compelling evidence of Newman's guilt, we conclude that

the alleged error here did not likely "affect[ ] the outcome of the trial court proceedings." (Citation and punctuation omitted.) *Kelly*, supra, 290 Ga. at 33 (2) (a). Cf. *Barrett v. State*, 292 Ga. 160, 178-179 (3) (c) (5) (733 SE2d 304) (2012) (in the context of ineffective assistance of counsel, no prejudice shown from counsel's failure to request specific defense of habitation charge where jury rejected defendant's claim of self-defense and defendant's own testimony would not have established reasonable belief that deadly force was necessary to prevent unlawful entry into residence); *Dolphy v. State*, 288 Ga. 705, 708 (2) (b) (707 SE2d 56) (2011) (strong evidence of defendant's guilt, along with the defendant's "shifting stories," made it highly probable that alleged trial court error in failing to rebuke prosecutor did not affect verdict). Accordingly, we find no plain error based on the trial court's failure to instruct the jury on defense of habitation.

(b) Because no harm resulted from the trial court's failure to give a charge on defense of habitation, trial counsel could not have been ineffective for failing to request such a charge. See *Barrett*, supra, 292 Ga. at 179-180 (3) (c) (5); *Hampton v. State*, 302 Ga. 166,

168-169 (2) (805 SE2d 902) (2017) ("[T]his Court has equated the prejudice step of the plain error standard with the prejudice prong for an ineffective assistance of counsel claim.").

3. For all of the reasons stated above, the trial court erred in granting Newman's motion for new trial. We therefore reverse the trial court's decision. However, because the trial court also failed to address Newman's remaining claims in his motion for new trial, we remand this case to the trial court for the resolution of those claims.

Judgment reversed and case remanded with direction. All the Justices concur.

Decided April 29, 2019 – Reconsideration denied May 20, 2019.

Murder. Chatham Superior Court. Before Judge Abbot.

Meg E. Heap, District Attorney, Matthew Breedon, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, for appellant.

Steven L. Sparger, for appellee.