309 Ga. 171
FINAL COPY

S20A0409. NEWMAN v. THE STATE.

MELTON, Chief Justice.

This is the second appearance of this case in this Court. In *State v. Newman*, 305 Ga. 792 (827 SE2d 678) (2019) ("*Newman I*"), we reversed the trial court's grant of David Miller Newman's motion for a new trial. In doing so, we found that the trial court erred in concluding that harmful error occurred at Newman's trial based on the court's failure to give a sua sponte jury charge on the use of force in defense of habitation under OCGA § 16-3-23. See *Newman I*, supra, 305 Ga. at 797-798 (2) (a). However, we remanded the case to the trial court for consideration of the remaining claims raised in Newman's motion for new trial that had not been ruled upon in the trial court's original order on the motion. Id. at 798 (3). This appeal stems from the trial court's denial of Newman's numerous remaining claims relating to the alleged ineffective assistance of his trial counsel. For the reasons that follow, we affirm.

1. Viewed in the light most favorable to the verdicts, the evidence presented at Newman's trial, as summarized in *Newman I*, was as follows:

[I]n June 2016, Newman worked as a supervisor at a company called Salt Creek Couriers ("Salt Creek"). On the morning of June 16, 2016, [Jason] Wood, one of the employees of Salt Creek, failed to report for work, and Newman went to Wood's home and fired Wood from Salt Creek. Newman took the keys to a company van from Wood and planned to return later to retrieve the van from Wood's home. Although Newman did not have any violent confrontation with Wood at that time, he nevertheless decided to retrieve a handgun before returning to Wood's house based on "a gut instinct." Newman returned to Wood's home around 6:30 p.m. that night in a black van with his friend, Carolee Pritchard, one of the owners of Salt Creek, to retrieve the white company van.

Wood's girlfriend, [Candace] Shadowens, was at home with Wood when Newman and Pritchard arrived. Newman spoke with Wood outside the house, and, at some point, Newman pulled out his gun. When Shadowens came outside, Wood told her to call 911 because Newman had pulled a gun on him. As Shadowens started to dial 911, Newman said, referring to Shadowens, "I'll kill that b**ch." Shadowens replied, "If you're going to shoot somebody, just shoot somebody, you fat b**ch." Newman then shot Wood in the chest as Wood attempted to push Shadowens out of the way. The shell casing from the gunshot was later found in some grass that was, according to the crime scene investigator, "pretty far from where the van would [have been]," which

was consistent with the gun being fired outside of the van. Further, almost all of Wood's blood was located on the outside of the van, which indicated, according to the State's forensic pathologist, that Wood was not inside the van, but outside of it, when he was shot. A neighbor of Wood's, Jeremy Zottola, had a surveillance system that captured audio of the gunshot, and that captured audio of Shadowens shouting "If you're going to shoot somebody, just shoot somebody, you fat b**ch," just before the gunshot. The video from the surveillance system only showed Newman and Pritchard driving away from the scene in the black van and the white company van. Another neighbor of Wood who was a registered nurse heard the gunshot and attempted to render aid to Wood at the scene, but Wood died from his gunshot wound. When officers arrived, Shadowens told them that Newman had shot Wood.

While fleeing the scene in the company van, Newman threw his handgun out the window and called 911. The gun was later recovered by police. During the 911 call, Newman claimed that Wood had a gun and shot at him. The police pulled Newman over while he was still on the phone with 911, and he then informed police that he did not know what happened and that he just heard a gunshot and drove off. When Newman was later interviewed by police, he changed his story again, this time claiming that neither he nor Wood had a gun, and that when he heard a loud boom he left the scene. Newman was then arrested, and, when he was interviewed for a second time by police, he changed his story again, now admitting that he had a gun, but claiming that the gun accidentally went off when Wood hit the van door, which jarred the gun.

On September 14, 2016, Newman was charged with malice murder; two counts of felony murder (predicated on aggravated assault and possession of a firearm by a convicted felon); two counts of aggravated assault; attempted murder of Shadowens; four counts of possession of a firearm during the commission of a felony; and possession of a firearm by a convicted felon.

After being indicted, Newman changed his story once more, saying in an interview with the prosecuting attorney that, after he arrived at Wood's house with a gun, Wood got on his phone, saying that he was dialing 911, and also saying to Newman that he was going to "get [his] money" from Newman. Newman said to Wood, while holding the gun, "Don't make me shoot you. Go inside." Wood then entered the house and re-emerged with Shadowens behind him, and Shadowens was carrying a baseball bat. Newman claimed that he got into the company van and put the gun on his lap. Then Shadowens opened the door to the van, which allowed Wood to jump into the van, and, as the gun started to fall from Newman's lap, Newman grabbed it and it accidentally went off. Pritchard asked Newman if he had shot Wood, and Newman said, "No, the gun just went off."

At trial, Pritchard testified that, after Newman got into the company van, Shadowens opened the door to the van and Wood was inside the van when the [gun] went off. Then Pritchard saw Wood run back toward the front of his house. Newman testified in his own defense and changed his story yet again. This time he claimed that, when he arrived at Wood's home, he placed $100 in an envelope and put that envelope inside the cup holder of the company van. Newman alleged that Wood threatened to rob him and that Newman pulled out his gun, cocked

it, and said, "No, you ain't." Wood then stopped coming at Newman and got on his phone to call 911. Newman then got into the company van, put the gun on his lap, and tried to lock the van door, but the door did not lock. Then Wood and Shadowens ran to the van and Shadowens opened the door to the van while Wood started to get into the van. The gun then slipped from Newman's lap after Wood hit him and it fired when Newman reached to grab it. Newman believed that the safety was still on and that the gun "just went off" without him trying to shoot it.

Id. at 793-795 (1). Following an April 24-27, 2017 jury trial:

Newman was found guilty of both counts of felony murder and aggravated assault, three of four counts of possession of a firearm during the commission of a felony, and possession of a firearm by a convicted felon. The jury could not reach a verdict on malice murder (and the State then entered an order of nolle prosequi on that count), and acquitted Newman of attempted murder and one count of possession of a firearm during the commission of a felony. Newman was sentenced to serve life in prison for one of the felony murder counts, twenty concurrent years for the aggravated assault upon Shadowens, five consecutive years for the felon-in-possession-of-a-firearm count, and five years each for two of the three possession-of-a-firearm-during-the-commission-of-a-felony counts. The remaining counts were merged or vacated for sentencing purposes.

Id. at 795 (1) n.1. After this Court reversed the trial court's September 17, 2018 grant of Newman's motion for new trial and

remanded the case to the trial court for further proceedings, see id.

at 798 (3), the trial court denied Newman's remaining grounds of

ineffective assistance of counsel on August 27, 2019, prompting the

current appeal.

2. Newman contends that his trial counsel was ineffective in

many respects. We disagree.

> In order to succeed on his claim of ineffective assistance, [Newman] must prove both that his trial counsel's performance was deficient and that there is a reasonable probability that the trial result would have been different if not for the deficient performance. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). If an appellant fails to meet his or her burden of proving either prong of the *Strickland* test, the reviewing court does not have to examine the other prong. Id. at 697 (IV); *Fuller v. State*, 277 Ga. 505 (3) (591 SE2d 782) (2004). In reviewing the trial court's decision, "'[w]e accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.' [Cit.]" *Robinson v. State*, 277 Ga. 75, 76 (586 SE2d 313) (2003).

*Wright v. State*, 291 Ga. 869, 870 (2) (734 SE2d 876) (2012).

(a) *Arranging for Newman to be interviewed a second time by Detective Eric Smith (the lead detective in the case) and to be*

*interviewed by the prosecutor, and arranging for Newman to testify under oath at a pretrial immunity hearing.*[1]

Trial counsel testified at the motion for new trial hearing that he arranged Newman's additional interview with Detective Smith and Newman's interview with the prosecutor *at Newman's request*, as Newman wished to "clarify" several inconsistent statements that he had provided to investigators prior to being indicted. Newman indicated to his counsel that he wanted to provide a "proper rendition . . . of what happened," and Newman's counsel used the statements to support Newman's story of self-defense. And, counsel only arranged the interviews after discussing with Newman the potential benefits and consequences of agreeing to them, including the fact that the interviews could be used against Newman at trial. We cannot say that trial counsel's strategy, after discussing the potential consequences with Newman, was unreasonable. Cf.

---

[1] Newman moved for immunity from prosecution pursuant to OCGA § 16-3-24.2 (person is immune from prosecution and has no duty to retreat when using threats or force in defense of self or others or in defense of habitation or real property under certain circumstances). Following a February 24, 2017 hearing, the trial court denied this motion on February 27, 2017.

*Anthony v. State*, 303 Ga. 399, 410 (9) (811 SE2d 399) (2018) (despite fact that some of the defendant's own testimony was unfavorable to him, attorney did not perform deficiently by allowing defendant to testify at bond hearing where defendant wished to do so and attorney properly advised him about whether to testify).

With respect to Newman's choice to testify at the pretrial immunity hearing, because Newman did not ask his trial counsel any questions at the motion for new trial hearing about the reasons why Newman decided to testify, we presume that any reason relating to trial counsel's advice to Newman about testifying was strategic and would not amount to ineffective assistance. See, e.g., *Ballard v. State*, 281 Ga. 232, 233 (2) (637 SE2d 401) (2006); *Chatman v. Mancill*, 280 Ga. 253, 258 (2) (c) (626 SE2d 102) (2006) ("In the absence of testimony to the contrary, counsel's actions are presumed to be strategic, and strongly presumed to fall within the wide range of reasonable professional assistance.") (citation omitted). Newman's claim of immunity was supported by his own testimony that he acted in self-defense or defense of habitation (the

van)[2] at the time that he shot Wood. We cannot say that it was unreasonable for counsel to support Newman in his desire to testify at the immunity hearing in order to provide this evidence.

(b) *Failing to object during the State's opening statement on 18 occasions.*

Newman faults counsel for failing to object to the State's opening statement on the ground that it ventured outside of what the prosecutor expected the evidence to show at trial. However, while trial counsel did not give a specific strategic reason for failing to object to 11 of the 18 statements referenced by Newman in his brief, the record reveals that no objection was necessary with respect to those 11 statements, because the statements, when viewed in context, were not objectionable. For example, in five of his selective quotations of the prosecutor's statements, Newman omits the prosecutor's introductory comments to the jury such as "[t]he evidence is going to show," and "what the evidence will be." The

---

[2] "As used in [OCGA §] 16-3-23 . . . the term 'habitation' [includes] any . . . motor vehicle[.]" OCGA § 16-3-24.1.

prosecutor then highlighted for the jury the trial evidence that he believed would support exactly what he said he expected the evidence to show. Thus, these statements made by the prosecutor were proper, and Newman's attempt to recharacterize them to make them seem improper is unavailing. See *Menefee v. State*, 301 Ga. 505, 511 (4) (a) (801 SE2d 782) (2017) ("[W]hen making opening statements, the prosecutor is allowed to state what the evidence is expected to show and the content of such statements is within the broad discretion of the trial court.")

Additionally, in six statements where the prosecutor did not immediately say "the evidence is going to show" or use a similar expression beforehand, the prosecutor either used such an expression immediately after making the comment or properly elaborated on what he expected the evidence would show at trial. See *Calhoun v. State*, 308 Ga. 146, 151 (2) (b) (839 SE2d 612) (2020) ("While [a defendant] may disagree with [a] prosecutor's characterization of the evidence, [a] prosecutor [is] within bounds during opening statement to elaborate on what he expect[s] the

evidence to show" at trial.). Cf. *Thomas v. State*, 268 Ga. 135, 137 (4) (485 SE2d 783) (1997) (The prosecutor did not make improper remarks during opening statement where "references in opening statement and closing argument to Thomas and his co-defendant as 'partners in crime,' and 'gangsters,' who committed a cowardly, despicable act, were reasonable inferences from the evidence."). "Given the nature of the prosecutor's comments, an objection [to these 11 statements] was unnecessary, and counsel is not ineffective for failing to lodge a baseless objection." (Citation omitted.) *Calhoun*, supra, 308 Ga. at 152 (2) (b).

With respect to the remaining seven statements, the record shows that Newman's trial counsel made a reasonable strategic decision not to object. See *Davis v. State*, 306 Ga. 140, 144 (3) (a) (829 SE2d 321) (2019) ("Whether to object to the content of an opening statement is a tactical decision, and trial counsel's reasonable tactical decision not to object during opening statements does not generally qualify as deficient performance.") (citation and punctuation omitted). Specifically, in all seven of these statements,

the prosecutor was commenting and elaborating on audio and video excerpts that were played for the jury during the opening statement and that were later admitted into evidence at trial,[3] and trial counsel testified at the motion for new trial hearing that he chose not to object to the prosecutor's characterization of the excerpts because he knew that these audio and video clips would ultimately be admitted at trial for the jury to evaluate on its own. Trial counsel's decision was reasonable. See id. at 144 (3) (a) (Trial counsel's decision not to object to the "State's playing for the jury a video recording of the crime scene and portions of an audio recording of [the defendant's] statement to police, as well as displaying 'a very graphic photograph' of the crime scene" during the State's opening statement was reasonable and did not amount to deficient performance where the items were later admitted into evidence at trial and "trial counsel testified that he knew [at the time of the opening statement that]

---

[3] Newman does not claim that his counsel was ineffective for failing to object to the use of these audiovisual aids during the State's opening statement. He instead contends that his counsel should have objected to various statements that the prosecutor made after presenting these clips to the jury.

the video, audio recording, and crime scene photograph would all be properly admitted into evidence."). See also *Calhoun*, supra, 308 Ga. at 151 (2) (b). Accordingly, Newman has failed to show deficient performance from his trial counsel's failure to object. *Davis*, supra, 306 Ga. at 144 (3) (a).

(c) *Failing to object to the prosecutor stating during his opening statement that he would not call Pritchard as a witness at trial.*

Newman contends that, when the prosecutor said in his opening statement that he would *not* call Pritchard as a trial witness because she would favor Newman due to her close personal relationship with him, the prosecutor was impermissibly commenting on the fact that the defense *would* call her as a witness. See *Parker v. State*, 277 Ga. 439, 441 (2) (588 SE2d 683) (2003) ("[I]t is inappropriate for a prosecutor in a criminal case to discuss in opening statement the evidence [he] anticipates the defense will present at trial."). Because of this, Newman claims that his trial counsel was ineffective for failing to object to the prosecutor's statement. Newman is incorrect. The trial transcript reveals that

the prosecutor never said anything during his opening statement about the evidence that the defense would present at trial. The prosecutor stated that he would not be calling Pritchard as a witness because the evidence would show that she and Newman had an illicit affair[4] and that he "did not know" if the jury would ever hear from her. Accordingly, an objection on the basis that Newman asserts here would have been without merit, and his contention of ineffective assistance of counsel on this ground fails. *Crump v. State*, 301 Ga. 871, 873 (2) (804 SE2d 364) (2017) ("Failure to make a meritless objection cannot be evidence of ineffective assistance.") (citation and punctuation omitted).

(d) *Prompting Detective Smith and Officer Todd Selva to repeat on cross-examination that the location of blood evidence at the crime scene was consistent with Shadowens's version of events.*[5]

---

[4] The evidence did, in fact, show that Pritchard, who was married, was having an affair with Newman.

[5] Although Newman questions in his brief whether these witnesses could properly qualify as "experts" with regard to blood spatter evidence, he does not contend that his trial counsel was ineffective for failing to challenge the witnesses' qualifications. Rather, he contends that, "[r]egardless of whether [the witnesses] should have been allowed to give expert testimony regarding blood spatter, trial counsel had [the witnesses] *repeat* that testimony," which is what allegedly made trial counsel ineffective.

Strategic "[d]ecisions about cross-examination 'do not amount to deficient performance unless they are so unreasonable that no competent attorney would have made them under similar circumstances.'" (Citation omitted.) *Gaston v. State*, 307 Ga. 634, 642 (2) (d) (837 SE2d 808) (2020). Consistent with his strategy of supporting Newman's self-defense and accident theories by contradicting Shadowens's testimony, trial counsel questioned Detective Smith and Officer Selva about the location of the blood evidence. He did not attack Officer Selva's analysis of the placement of blood, but instead challenged the officer about his own memory. In doing so, trial counsel got Officer Selva to admit that he did not remember where, exactly, Shadowens said that the shooting had taken place. Officer Selva further admitted on cross-examination that he could only "gather . . . from what [he] remember[ed]" that he believed that Shadowens was "implying" that Wood was in a certain area when he was shot.

And, with respect to Detective Smith, after allowing the detective to state his conclusions about the blood evidence, trial

counsel then got the detective to admit that he could not definitively say how close Wood was to Newman at the time that Wood was shot. Trial counsel further advanced his trial strategy by attacking Shadowens's credibility when he cross-examined her, emphasizing her testimony that she "wasn't sure" where the gun was pointed at certain points during the confrontation because things were "so blurry" without her glasses.

We cannot say that it was unreasonable for trial counsel to have conducted cross-examination in the manner that he did. Indeed, by attempting to cast doubt on what, exactly, Shadowens's "version of events" really was, counsel also raised doubts about whether any blood evidence could be consistent with any particular version of events offered by her. The fact that other counsel may have chosen a different strategy for dealing with the officers' testimony about blood evidence at the crime scene does not mean that trial counsel performed deficiently. See, e.g., *Smith v. State*, 283 Ga. 237, 239 (2) (b) (657 SE2d 523) (2008).

(e) *Failing to object to testimony about the differences between Newman's statements in his 911 call and in Newman's statements to police.*

Newman contends that his trial counsel was ineffective for failing to object to Sergeant Raymond Shores's and Detective Smith's testifying about differences between Newman's statements in his 911 call and his stories to police, because neither Sergeant Shores nor Detective Smith knew about the content of the 911 call prior to trial. However, the record reveals that Sergeant Shores and Detective Smith were asked about the differences between the statements made during the call and Newman's other statements *after* the 911 recording was admitted into evidence and played for the two officers to listen to while they were testifying. Thus, any lack of familiarity that the officers had with Newman's statements from the 911 recording prior to trial no longer existed. Accordingly, any objection to the officers' testimony about discrepancies between the statements made in the recording and Newman's other statements based on their alleged lack of familiarity with the recording would have been meritless. *Crump*, supra, 301 Ga. at 873 (2) ("Failure to

make a meritless objection cannot be evidence of ineffective assistance.") (citation and punctuation omitted).

(f) *Failing to object or move for a mistrial when the State asked Deputy Tim Capps, on redirect examination, questions about Newman's statements.*

The record reveals that, for the final question during his cross-examination of Deputy Capps, trial counsel asked the deputy whether he had any knowledge of Newman providing to police information about the location of the pistol used in the shooting. The deputy responded, "No, sir." On redirect examination immediately thereafter, the State asked four questions about whether Deputy Capps had any knowledge about statements that Newman made in his interviews with police, "[s]ince [Newman's counsel had just] asked if [Deputy Capps] had any knowledge that Mr. Newman provided the location of the pistol." Deputy Capps responded, "No, sir" to each of the State's questions.

Because trial counsel had already opened the door to the State's questions by pursuing the same line of questioning immediately beforehand, an objection to, or a motion for mistrial

relating to, the State's questions on redirect would have been meritless. See *Doyle v. State*, 291 Ga. 729, 733 (3) (733 SE2d 290) (2012) (Trial counsel was not ineffective for failing to object to the prosecutor's comment on defendant's silence where trial counsel "open[ed] the door to this line of questioning" and "any objection to the prosecution's comment upon appellant's silence would have been overruled."). This claim of ineffective assistance fails. Id.

(g) *Failing to object or move for a mistrial when the State asked Detective Smith about Newman's truthfulness during his second interview.*

After playing for the jury the videos of Newman's two interviews with Detective Smith, the State asked Detective Smith about various inconsistencies between what Newman told the detective in his first interview and what he told him in the second interview. While the majority of the State's questioning about the interviews simply pointed out the inconsistencies, in four questions, the State directly asked Detective Smith if Newman told him the truth during his interviews with the detective. On each occasion, Detective Smith responded that Newman was not telling the truth.

Because Newman testified at trial in his own defense, he claims that trial counsel was ineffective for failing to object to the State's questions to Detective Smith about Newman lying, as "'it is improper to ask a testifying (witness) whether another witness is lying.'" (Citation omitted.) *Jones v. State*, 299 Ga. 40, 43 (3) (785 SE2d 886) (2016). See also OCGA § 24-6-620 ("The credibility of a witness shall be a matter to be determined by the trier of fact, and if the case is being heard by a jury, the court shall give the jury proper instructions as to the credibility of a witness."). We disagree that trial counsel's failure to object amounted to ineffective assistance of counsel.

Assuming without deciding that trial counsel performed deficiently by failing to object or move for a mistrial with regard to the four questions, Newman cannot show prejudice. Indeed, the four questions represented a small part of the State's overall questioning of Detective Smith, and, as we concluded in *Newman I*, supra, 305 Ga. at 797 (2) (a), the evidence of Newman's guilt was compelling. Specifically,

the record shows that Newman deliberately brought a gun with him to Wood's house to retrieve the company van; that Shadowens can be heard in a surveillance video confronting Newman about his apparent desire to shoot someone by telling him that "[i]f [he was] going to shoot somebody, just shoot somebody"; that a gunshot can be heard on the surveillance video just after Shadowens's statement to Newman; that all of the forensic evidence presented at trial ran contrary to Newman's claim that the shooting took place inside the van; and, most importantly, that Newman gave several shifting and inconsistent stories about how the shooting took place — none of which suggested that he intentionally shot Wood, including his trial testimony in which he told the jury that the shooting was accidental.

Id.

Independent of Detective Smith's opinion about Newman's veracity, see OCGA § 24-6-620, supra, the other evidence of Newman's guilt already indicated to the jury that not all of the stories that Newman told to police could be true. In light of the compelling evidence of Newman's guilt, we cannot conclude that there is a reasonable probability that the outcome of the trial would have been different even if trial counsel had successfully objected to the questions posed by the State. See, e.g., *Tanner v. State*, 303 Ga. 203, 208-209 (3) (811 SE2d 316) (2018) ("Considering the strength of

the properly admitted evidence of [the defendant's] guilt and the context of a police interview" at issue, the admission into evidence of the officer's statement that he was "confident [that the defendant would be] going to prison" was harmless, as "any rational juror would have guessed that the detective believed as much without being told.") (citation and punctuation omitted); *Pyatt v. State*, 298 Ga. 742, 755 (6) (b) (784 SE2d 759) (2016) (The defendant failed to show prejudice from his counsel's failure to object to an officer's opinion testimony on ultimate issue of how the murder took place, because, "[a]lthough it may have been improper for [the detective] to share his subjective belief with the jury explicitly, any rational juror would have guessed that [the detective] believed as much without being told. As we have explained before, such comments upon the patently obvious generally pose little, if any, danger of prejudice.") (citation and punctuation omitted).

(h) *Failing to challenge Detective Smith's testimony relating to the recovery of information from Wood's cell phone.*

Newman contends that trial counsel was ineffective for failing to impeach Detective Smith's testimony that information had been downloaded from Wood's cell phone by police, because there was no evidence form showing that the cell phone had ever been recovered from the crime scene or that information had been downloaded from it. However, the record reveals that trial counsel got Detective Smith to admit on cross-examination that, although he "believed" that police had downloaded information from Wood's cell phone, the police did not recover "anything significant" from the phone. Further, no evidence allegedly downloaded from Wood's phone was introduced at the trial. In this regard, there was no need for trial counsel to further challenge Detective Smith's testimony in the manner that Newman now contends on appeal. Again, strategic decisions about cross-examination generally do not amount to deficient performance, and the fact that different counsel may have chosen to challenge Detective Smith's testimony about the recovery of Wood's cell phone in a different way does not constitute evidence that trial counsel performed deficiently. See, e.g., *Funes v. State*, 289

Ga. 793, 796 (3) (b) (716 SE2d 183) (2011) ("Cross-examination is grounded in trial strategy and rarely results in constitutionally deficient performance, even if aspects of the examination are challenged in hindsight.")

(i) *Failing to object to Newman's prior convictions being admitted into evidence at trial for impeachment purposes.*

Prior to trial, the State properly notified trial counsel of its intent to use four of Newman's prior convictions for impeachment purposes if he chose to testify at trial, three of which were more than ten years old. See OCGA § 24-6-609 (b). Newman claims that his trial counsel was ineffective for failing to object to the admission of the three older convictions solely on the basis of their age.[6] See id. (Evidence of a prior conviction "shall not be admissible if a period of more than ten years has elapsed since the date of the conviction . . . . *unless the court determines*, in the interests of justice, that the probative value of the conviction supported by specific facts and

_____

[6] The three convictions at issue were from the early 1990s – two habitual violator convictions from 1991 and 1992, and one conviction for possession of a firearm by a convicted felon in 1990. Newman focuses his argument in his brief on the age of the convictions and not the nature of the convictions themselves.

circumstances substantially outweighs its prejudicial effect.") (emphasis supplied).

Despite the age of the three prior convictions, trial counsel testified at the motion for new trial hearing that he did not believe that an objection to the admission of the prior convictions would have been successful, and the record reveals that this belief was reasonable under the circumstances. Specifically, the trial court fully considered the "timeliness of [the] convictions" and the fact that they were "old ones." Trial counsel discussed with Newman that his prior convictions could possibly be used against him for impeachment purposes if he chose to testify, and the trial court reminded Newman, prior to the defense presenting its case at trial, that if it found the prior convictions to be admissible for impeachment purposes, the convictions could be used to impeach his testimony. Nevertheless, Newman still wished to testify, and the trial court stated on the record that the convictions were "admissible for the purposes of impeachment, the probative value of them outweighing the prejudicial effect." See OCGA § 24-6-609 (b). Thus,

even if trial counsel had objected to the admission of the prior convictions on the basis of their age, the trial court still would have found the convictions to be admissible for impeachment purposes, as the court had already considered the age issue in making its ruling. Trial counsel was not ineffective for failing to object to the use of the prior convictions for impeachment purposes based on their age. See *Davis*, supra, 306 Ga. at 145 (3) (b) (Trial counsel did not perform deficiently where he "testified at the motion for new trial hearing that he did not believe an objection was advisable under the circumstances[,] . . . because '(a) lawyer is not required to make an objection that he reasonably believes will fail.'") (citation omitted).

Moreover, even if trial counsel performed deficiently by failing to object (and the trial court erred in allowing these prior convictions into evidence for impeachment purposes), we conclude that the admission into evidence of these three prior convictions, which were not for particularly inflammatory offenses, did not result in prejudice to Newman for the same reasons discussed in Division 2

(g), supra. See *Toomer v. State*, 292 Ga. 49, 59 (4) (734 SE2d 333) (2012).

3. Finally, we must evaluate the cumulative effect of prejudice resulting from counsel's assumed deficient performance. *Schofield v. Holsey*, 281 Ga. 809, 811 (II) n.1 (642 SE2d 56) (2007) ("[I]t is the prejudice arising from 'counsel's errors' that is constitutionally relevant, not that each individual error by counsel should be considered in a vacuum."). As discussed above as to the claims addressed in Division 2 (a)-(f) and (h), Newman failed to show that his trial counsel performed deficiently. The only subdivisions in which we have assumed that trial counsel may have performed deficiently are Division 2 (g) and (i), supra. And "[t]he cumulative prejudice from any assumed deficiencies discussed in Division[ ] [2 (g) and (i)] is insufficient to show a reasonable probability that the results of the proceedings would have been different in the absence of the alleged deficiencies." (Citation and punctuation omitted.) *Davis*, supra, 306 Ga. at 150 (3) (j). Accordingly, Newman's claims of ineffective assistance fail.

*Judgment affirmed. All the Justices concur.*

DECIDED JUNE 16, 2020.
Murder. Chatham Superior Court. Before Judge Abbot.
*Steven L. Sparger*, for appellant.
*Meg E. Heap, District Attorney, Matthew Breedon, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Michael A. Oldham, Assistant Attorney General*, for appellee.