NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: August 26, 2025

S25A0508. WOODS v. THE STATE.

ELLINGTON, Justice.

A Bibb County jury found Christopher Leon Woods guilty of murder and other crimes in connection with the July 2021 shooting death of Freddie Lee Battle.[1] Woods contends that his trial counsel was ineffective for failing to properly advise him of his right to testify in his defense at trial. For the reasons explained below, we

---

[1] The crimes occurred on July 30, 2021. On October 8, 2021, a Bibb County grand jury indicted Woods for the crimes of malice murder (Count 1); felony murder predicated on the offense of possession of a firearm by a convicted felon (Count 2); and possession of a firearm by a convicted felon (Count 3). During a jury trial that began on April 18, 2023, the jury found Woods guilty on all counts. The trial court sentenced Woods to life in prison on Count 1, merged Count 3 into Count 2, and then vacated Count 2. (We express no opinion as to whether Count 3 was properly merged and note that this Court generally declines to exercise its discretion to correct any merger errors that benefit the defendant when the State has not raised the error in a cross-appeal. See *Dixon v. State*, 302 Ga. 691, 696-97. Woods filed a timely motion for new trial on May 22, 2023, which he twice amended. After a hearing held on August 13, 2024, the trial court denied the amended motion for new trial on August 26, 2024. Woods filed a timely notice of appeal on September 18, 2024. The case was thereafter docketed in this Court to the April 2025 term and submitted for a decision on the briefs.

see no merit to this contention and affirm.

1. The evidence presented at trial showed the following. On July 30, 2021, Woods called 911 and reported that he had shot his roommate and friend, Battle. A sergeant with the Bibb County Sheriff's Office, who was wearing a bodycam at the time, responded to Woods's Bibb County home. When the sergeant arrived, he saw a man, whom he later identified as Woods, standing in the front yard, drinking liquor, and smoking a cigarette. The sergeant drew his service weapon and ordered Woods to lie on the ground. Woods complied, after he finished a shot of liquor.

As the sergeant handcuffed Woods, Woods offered, unsolicited, that he had been drinking and that he "killed the motherf**ker." The sergeant asked Woods if he had any weapons on him, and Woods admitted that he had knives. After disarming Woods, the sergeant took him to the patrol car. On the way to the patrol car, Woods said that he had been wanting to "kill his a** for two years." When the paramedics arrived, Woods told them: "He's laying on the floor dead." The sergeant responded, "He's dead?" Woods stated: "Yeah,

he's dead, I shot him, I killed him, and I wanted to kill him too."

After he sat in the patrol car, Woods made additional unprompted statements. He said that he and Battle had argued, he was fed up with Battle "putting his hands on him," Battle had made threats to him in the past, and he could not take it anymore. The State played the sergeant's body camera video of the encounter for the jury.

On cross-examination, and after having his memory refreshed with parts of his body camera video, the sergeant also testified that Woods told him that he and Battle liked to drink and hunt raccoons together; that, although they were friends and roommates, they argued often; that Battle had knocked Woods down several times on the evening of the shooting; that Battle had put his finger in Woods' face; and that Battle had hit Woods in the back of the head. However, the sergeant saw no physical evidence, such as torn clothing or injury to Woods's body, which led him to believe that Battle had fought with or struck Woods that night.

The sergeant testified that he found Battle's body on the living

3

room floor. A crime scene investigator with the Bibb County Sheriff's Office took photos of and collected evidence from Woods's residence. The photographs, which were published to the jury, showed Battle's body lying face-down on the living room floor in front of a chair. Photographs also showed two holes in Battle's back and blood spatter on the carpet and ceiling. Photographs taken in the bedroom showed a hunting rifle lying on the bed next to a spent shell casing. The investigator testified that, as she took photographs of Battle's body, she saw no weapons lying close to his body.

The forensic pathologist who performed the autopsy of Battle's body testified that he determined from Battle's wounds that the bullets had traveled from back to front, indicating that Battle was shot in the back. He saw no soot or stippling on the entry wounds, which indicated the gun was likely fired from three or more feet from Battle's back. He concluded that Battle's cause of death was "a gunshot wound of the torso," and the manner of death was homicide. Finally, on the issue of Woods's status as a convicted felon, the State submitted a certified copy of Woods's 1994 felony conviction for

4

aggravated assault with intent to rape.

2. Woods contends that his trial counsel's "advice against testifying" was constitutionally deficient, given the trial court's initial decision not to give counsel's requested charge on voluntary manslaughter. For the following reasons, we disagree.

To prevail on a claim of ineffective assistance of counsel, a defendant generally must show that counsel's performance was constitutionally deficient and that the deficient performance resulted in prejudice to the defendant. See *Strickland v. Washington*, 466 U.S. 668, 687–695 (1984); *Wesley v. State*, 286 Ga. 355, 356 (2010). To satisfy the deficiency prong, a defendant must demonstrate that his attorney "performed at trial in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms." *Romer v. State*, 293 Ga. 339, 344 (2013) (citation omitted). See also *Strickland*, 466 U. S. at 687–688. This requires a defendant to overcome the strong presumption that trial counsel's performance "fell within a wide range of reasonable professional conduct." See *Marshall v. State*, 297 Ga. 445, 448

5

(citation and punctuation omitted). "If an appellant fails to meet his or her burden of proving either prong of the *Strickland* test, the reviewing court does not have to examine the other prong." *Lawrence v. State*, 286 Ga. 533, 533–534 (2010).

Counsel's theory of defense was that Woods was provoked by Battle. Prior to trial, defense counsel filed requests to charge that included a charge on voluntary manslaughter. At the end of the first day of testimony, during a discussion of the requests to charge, the State objected to the voluntary manslaughter charge. Defense counsel responded, arguing:

> Just based on the evidence that we've already received, they had an argument that escalated into a much more intense situation. Evidence is on the night in question that Mr. Battle had hit Mr. Woods in the head, had pushed him down several times, had been threatening him. I think those facts have been brought out in the evidence, and those could all amount to more than just words provocation in a situation like this; pointing his finger in his face, these are the kinds of things that can rise to the level of provocation for a voluntary instruction.

The judge said he doubted a voluntary manslaughter charge was applicable to the case, but that he would consider it. The following

day, the judge ruled that there was no basis for the voluntary manslaughter charge and that it would not be included in the final charge. Defense counsel objected to the trial court's ruling.

After the State rested, trial counsel asked for additional time to speak to her client in light of the court's ruling on the issue of the voluntary manslaughter charge. After Woods conferred with his counsel, the trial court advised Woods of his rights and asked Woods whether he wanted to testify. Woods said: "No, sir, no testifying." The defense then rested without calling any witnesses. Shortly thereafter, the judge announced that he had reviewed more case law and that he believed the voluntary manslaughter charge was warranted after all. The judge later charged the jury on voluntary manslaughter. During closing arguments, trial counsel presented Woods's defense as originally intended, emphasizing that Battle had provoked Woods and that Woods was intoxicated when he shot Battle.

At the motion for new trial hearing, trial counsel testified that she could not "think of a particular piece of evidence that [she] was

not able to get in that [she] tried to." Counsel was not asked whether she advised Woods to remain silent or to testify in his defense. Further, Woods did not testify at the motion for new trial hearing. Thus, the record is silent as to whether counsel advised Woods to testify or not to testify. Additionally, there is nothing in the trial transcript suggesting that defense counsel advised Woods not to testify. The transcript shows only that Woods and defense counsel had an off-the-record discussion concerning his decision to testify. Moreover, the judge inquired, on the record, whether Woods "personally" wanted to testify. The judge reminded Woods that the decision was his alone, and not his attorney's. Woods ultimately decided: "No, sir, no testifying."

Woods's claim of ineffective counsel fails on the first part of the *Strickland* test because he has not shown that his counsel advised him not to testify, let alone that counsel did so unreasonably. The record is silent as to what advice, if any, counsel gave Woods on that topic. The trial transcript shows only that Woods and counsel had an off-the-record discussion about Woods's decision to testify, after

which the judge asked Woods whether he "personally" wanted to testify, and Woods declined. At the hearing on Woods's motion for new trial, Woods did not testify, and although trial counsel did, she was not asked about any advice she gave Woods about whether to take the stand. In the absence of evidence that counsel advised Woods not to testify – let alone evidence that the advice was unreasonable – Woods cannot overcome the strong presumption that counsel's performance fell within the broad range of reasonable professional conduct. And even if counsel had advised Woods not to testify, it is generally a reasonable trial strategy to do so, and we see nothing here that suggests that such advice would have been unreasonable under the circumstances of this case. See *Newman v. State*, 309 Ga. 171, 175-176 (2020) (Because the defendant "did not ask his trial counsel any questions at the motion for new trial hearing about the reasons why [the defendant] decided to testify, we presume that any reason relating to trial counsel's advice to [the defendant] about testifying was strategic and would not amount to ineffective assistance. (citations omitted)). See also *Morgan v. State*,

9

321 Ga. 495, 504 (2025) ("Whether to testify in one's own defense is a tactical choice to be made by the defendant after consultation with his lawyer, and trial counsel's advice to a defendant not to testify is a strategic decision. It is generally enough for counsel to advise the defendant about the 'pros and cons' of testifying and explain that the ultimate choice is the defendant's to make." (citations and punctuation omitted)); *Washington v. State,* 294 Ga. 560, 566 (2014) ("As we have explained, when trial counsel does not testify at the motion for new trial hearing about the subject, it is extremely difficult to overcome the presumption that his conduct was reasonable." (citation and punctuation omitted)). For these reasons, Woods's claim of ineffective assistance of counsel fails.

*Judgment affirmed. All the Justices concur.*